Dear Mr. Miller:
This office has received your request for an official Attorney General Opinion in which you asked, in effect, the following questions:
 1. Under the provisions of 15 U.S.C. § 6312 that describes conditions under which an Indian tribe's tribal organization may provide for the regulation of professional boxing, may an Indian tribe that does not have its own boxing regulatory agency or commission enter into a contract to have professional boxing conducted within its jurisdiction regulated by a boxing commission of another Indian tribe?
 2. Under the provisions of 15 U.S.C. § 6312 a tribal organization may conduct professional boxing matches on its reservation. Does "reservation," as used in that section, include Indian land in Oklahoma such as the land on which a tribe's casino is located?
 3. Is the Oklahoma Professional Boxing Commission empowered to contract with an Indian tribe to regulate professional boxing matches held within that Indian tribe's reservation, or must such an agreement be accomplished through a cooperative agreement-often referred to as a compact-between the State and the tribe?
 INTRODUCTION
All three of your questions deal with the regulation of professional boxing matches held on land in Oklahoma under the jurisdiction of an Indian tribe. Your first two questions deal with the interpretation of the Professional Boxing Safety Act of 1996, 15 U.S.C. §§ 6301 through6313.[1] Your third question deals both with interpretation of that federal law and the Oklahoma law dealing with agreements between the state of Oklahoma and Indian tribes.
 I. A TRIBAL ORGANIZATION MAY PROVIDE FOR REGULATION OFPROFESSIONAL BOXING IN ONE OF TWO WAYS: (1) IT CAN CARRY OUTTHE REGULATION ITSELF OR (2) IT MAY ENTER INTO A CONTRACTWITH A STATE BOXING COMMISSION TO CARRY OUT THE REGULATION.IT IS, HOWEVER, NOT EMPOWERED TO CONTRACT WITH THE BOXINGCOMMISSION OF ANOTHER INDIAN TRIBE TO REGULATE PROFESSIONALBOXING.
The purpose of the federal Professional Boxing Safety Act 1996 as stated at 15 U.S.C. § 6302 is two-fold:
 (1) to improve and expand the system of safety precautions that protects the welfare of professional boxers; and
 (2) to assist State boxing commissions to provide proper oversight for the professional boxing industry in the United States.
Id.
At 15 U.S.C. § 6312(b) the Act provides for professional boxing matches conducted on Indian reservations. Under the Act, the term "Indian tribe" is defined by reference to Section 450b(e) of Title 25, which defines Indian tribe to mean:
 [A]ny Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C.A. § 1601 et seq.], which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians[.]
Id.
In dealing with professional boxing matches conducted on Indian reservations Section 6312 also defines the term "tribal organization" to have the same meaning as that in Section 450b(l) of Title 25, which defines "tribal organization" to mean:
 [T]he recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities: Provided, That in any case where a contract is let or grant made to an organization to perform services benefitting more than one Indian tribe, the approval of each such Indian tribe shall be a prerequisite to the letting or making of such contract or grant[.]
Id. (emphasis added).
In providing for the standards and licensing for professional boxing on Indian reservations 15 U.S.C. § 6312(b)(2) requires that a tribe's health and safety standards be at least as restrictive as state standards or standards of the Association of Boxing Commissioners, stating:
 If a tribal organization regulates professional boxing matches pursuant to paragraph (1), the tribal organization shall, by tribal ordinance or resolution, establish and provide for the implementation of health and safety standards, licensing requirements, and other requirements relating to the conduct of professional boxing matches that are at least as restrictive as-
 (A) the otherwise applicable standards and requirements of a State in which the reservation is located; or
 (B) the most recently published version of the recommended regulatory guidelines certified and published by the Association of Boxing Commissions.
Id. (emphasis added).
In establishing who can regulate professional boxing on an Indian tribe's "Reservation," 15 U.S.C. § 6312(b)(1) provides two options. The tribal organization may conduct such regulations itself, or it may enter into a contract with a State Boxing Commission to carry out such regulation:
 (b) Requirements
 (1) In general
 Notwithstanding any other provision of law, a tribal organization of an Indian tribe may, upon the initiative of the tribal organization-
 (A) regulate professional boxing matches held within the reservation under the jurisdiction of that tribal organization; and
 (B) carry out that regulation or enter into a contract with a boxing commission to carry out that regulation.
Id. (emphasis added).
At 15 U.S.C. § 6301(2)(A), the Professional Boxing Safety Act of 1996, as amended by the Muhammed Ali Boxing Reform Act, defines the term "boxing commission" to mean "an entity authorized under State law to regulate professional boxing matches." Id. (emphasis added). Thus, under the provisions of 15 U.S.C. § 6312, a tribal organization may regulate professional boxing on the tribe's reservation itself, or it may enter into a contract with a state boxing commission to carry out such regulation. The Act, however, does not authorize entering into contracts with the boxing commissions of other tribes to carry out such regulation.
 II. THE PROFESSIONAL BOXING SAFETY ACT OF 1996 DEFINES THE TERM"RESERVATION" TO MEAN "AREAS OVER WHICH A TRIBAL ORGANIZATIONEXERCISES GOVERNMENTAL JURISDICTION." THIS DEFINITIONREQUIRES REFERENCE TO THE GENERAL DEFINITION OF "INDIANCOUNTRY" AT 18 U.S.C. § 1151, BECAUSE IT IS THE DEFINITION OF"INDIAN COUNTRY" THAT DETERMINES WHERE A TRIBE HASGOVERNMENTAL JURISDICTION.
The Professional Boxing Safety Act of 1996 defines the term "reservation" at 15 U.S.C. § 6312(a)(2) to mean "thegeographically defined area over which a tribal organizationexercises governmental jurisdiction." Id. (emphasis added). An Indian tribe's ability to exercise governmental jurisdiction in any given location is dependent upon whether the location comes within the definition of "Indian country" defined at 18 U.S.C. § 1151 as follows:
 Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.
Id. The definition of "Indian country" in 18 U.S.C. § 1151 is used not only to determine criminal jurisdiction over Indian matters but civil jurisdiction as well. As the court in Thompson v. County ofFranklin, 987 F. Supp. 111 (N.D. N.Y. 1997) noted, in speaking of Section 1151's definition of Indian County:
 Although this definition is found in the criminal code, the Supreme Court has made clear that it governs for purposes of establishing civil as well as criminal jurisdiction over Indian matters. See Oklahoma Tax Comm'n v. Chickasaw Nation, 515 U.S. 450, 453, n. 2, 115 S.Ct. 2214, 2217 n. 2, 132 L.Ed.2d 400 (1995); California v. Cabazon Band of Mission Indians, 480 U.S. 202, 207, n. 5, 107 S.Ct. 1083, 1088 n. 5, 94 L.Ed.2d 244 (1987); DeCoteau v. District Court, 420 U.S. 425, 427 n. 2, S.Ct. 1082, 1084 n. 2, 43 L.Ed.2d 300 (1975).
Id. at 116. (emphasis added).
Thus, when land falls within the definition of "Indian country" as defined in Section 1151, it is the tribe that possesses civil, governmental and regulatory jurisdiction. Because the Professional Boxing Safety Act of 1996 at 15 U.S.C. § 6312(a)(2) defines "reservation" as areas over which "a tribal organization exercises governmental "jurisdiction" and because whether a tribal organization exercises jurisdiction over a geographically defined area depends on whether that area is "Indian country" as defined in 18 U.S.C. § 1151, to constitute a "reservation" under the Professional Boxing Act the land would have to constitute "Indian country."
Whether a particular tribal facility such as a casino is, in fact, located on Indian country depends on whether the land falls within one of the various categories within the definition in Section 1151. It is only when the geographically defined area in question is, in fact, Indian country that it constitutes a "reservation" under the Professional Boxing Safety Act of 1996 upon which a tribe may conduct professional boxing. Because all — some would argue almost all — reservations in Oklahoma have been disestablished, Indian country in Oklahoma depends on whether a particular tract of land (1) has been taken into trust by the federal government for the tribe's benefit (see 18 U.S.C. § 1151(a)), (2) is part of a dependent Indian community (see id. § 1151(b)), or (3) is allotted land, the Indian title to which has not been extinguished. See id. § 1151(c). Accordingly, whether a particular tract of land in Oklahoma constitutes Indian country is a fact question, which can only be answered after examining the records reflecting the history of that particular tract of land's title. Such fact questions cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 III. ANY AGREEMENT BETWEEN THE STATE OF OKLAHOMA AND A FEDERALLYRECOGNIZED INDIAN TRIBE LOCATED WITHIN OKLAHOMA FOR THEOKLAHOMA BOXING COMMISSION TO REGULATE PROFESSIONAL BOXINGMATCHES LOCATED WITHIN A TRIBES' INDIAN COUNTRY WOULD REQUIRETHE STATE TO ENTER INTO A COOPERATIVE AGREEMENT-OFTENREFERRED TO AS A COMPACT-WITH THE INDIAN TRIBE.
As noted above, one of the options available to a tribal organization is to contract with a state boxing commission to regulate professional boxing matches held within the tribe's "reservation." The third question you ask is whether an agreement for the Oklahoma Boxing Commission to conduct such regulation for a tribe can be accomplished through a simple contract between the Commission and a tribe, or whether such an agreement must be in the form of a Compact negotiated by the Governor or the Governor's designee.
While we look to federal law to determine the Indian tribes' authority in regulating professional boxing — which includes an option to contract with a state boxing commission to conduct such regulation — we look to State law to determine who is authorized to enter into such an agreement with a tribe.
While the Oklahoma Constitution at Article VI, Section 8 empowers the Governor to "conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States," it does not address who in state government shall conduct business and intercourse with Indian tribes. Rather, such matters are left to the Legislature to determine. In enacting 74 O.S. Supp.2006, § 1221(C)(1), the Legislature generally vested such power in the Governor. That subsection provides:
 The Governor, or named designee, is authorized to negotiate and enter into cooperative agreements on behalf of this state with federally recognized Indian Tribal Governments within this state to address issues of mutual interest. Except as otherwise provided by this subsection, such agreements shall become effective upon approval by the Joint Committee on State-Tribal Relations.
Id. Under the above-quoted provision, it is the Governor or the Governor's named designee who is empowered to negotiate and enter into cooperative agreements addressing issues of mutual interest between the State and Indian tribes. However, the Legislature has also, on occasion, authorized other entities to enter into agreements with Indian tribes as it did in 74 O.S. Supp.2006, § 840-7.1. Under that statute when an Indian tribe purchases real property from the State, the state agency involved may enter into a contract for the purpose of leasing one or more of its employees to the tribe, stating:
 A. A state agency may enter into a contract with any federally recognized tribe or Indian Nation for the purpose of leasing one or more of its employees as follows:
 1. The Indian Tribe or Nation has purchased real property from the state; and 2. The employee or employees were employed by the agency at the site of the purchased real property.
 B. The Indian Tribe or Nation shall pay to the agency in a manner specified in the contract an amount equal to the salary, employer retirement contributions and flexible benefit allowance attributed to such leased employee or employees and any other expenses as agreed by the parties in the contract.
 C. Leased employees pursuant to this section shall not lose any rights or benefits of being a state employee and shall retain their classification status.
Id. (emphasis added).
Nowhere do the Oklahoma Statutes, either in the Oklahoma Professional Boxing Act, 3A O.S. 2001 Supp.2006, §§ 601 through 622, or otherwise, empower the Oklahoma Boxing Commission to enter into agreements with Indian tribes. Thus, any agreement between the tribe and the State under which the Oklahoma Boxing Commission would regulate professional boxing being conducted on land within the governmental jurisdiction of the tribe, must be accomplished through a cooperative agreement (compact) between the State and the tribe that must be negotiated and entered into by the Governor or the Governor's named designee.
 It is, therefore, the official Opinion of the Attorney General that:
 1. Under the provisions of 15 U.S.C.
§ 6312(b)(1), part of the federal Professional Boxing Safety Act of 1996, 15 U.S.C. §§ 6301 — 6313,[2] a federally recognized Indian tribe's tribal organization may regulate professional boxing matches held within its jurisdiction in one of two ways:
 (a) It may regulate professional boxing matches itself, or
 (b) It may enter into a contract with a state boxing commission to carry out such regulation.
 The provisions of 15 U.S.C. § 6312, however, do not authorize a tribal organization to enter into a contract with another Indian tribe to carry out such regulation of professional boxing.
 2. The land on which 15 U.S.C. § 6312 authorizes federally recognized Indian tribes to conduct and regulate professional boxing matches is a geographical area of land over which the tribe has "governmental jurisdiction," which the statute refers to by definition as the tribes' "reservation." Id. § 6312(a)(2). To determine the geographical area over which a federally recognized Indian tribe has jurisdiction, we look to the definition of "Indian country" at 18 U.S.C. § 1151. Lands falling within that definition are lands in which the Indian tribe has governmental jurisdiction for the purposes of the Professional Boxing Safety Act of 1996, 15 U.S.C. §§ 6301 — 6313. Whether a particular tract of land is, in fact, Indian country is a question of fact, which must be determined on a case-by-case basis and cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 3. The Oklahoma Legislature, at 74 O.S. Supp.2006, § 1221(C)(1), has empowered and authorized the Governor or the Governor's named designee to negotiate and enter into cooperative agreements (often referred to as compacts), addressing issues of mutual interest between the State and federally recognized Indian Tribal Governments. While some other state entities are also authorized to negotiate specified contracts between the State and federally recognized Indian tribes, no statute, including the Oklahoma Professional Boxing Licensing Act, 3A O.S. 2001 Supp.2006, §§ 601 — 622, authorizes the Oklahoma Boxing Commission to enter into an agreement with a federally recognized Indian tribe. Accordingly, agreements between the State of Oklahoma and a federally recognized Indian tribe under which the Oklahoma Boxing Commission would regulate professional boxing matches held on tribal land over which the tribe exercises governmental jurisdiction, must be negotiated and entered into by the Governor or the Governor's designee under the provisions of 74 O.S. Supp.2006, § 1221.
[1] Pub.L. 104-272, Oct 9, 1996, 110 Stat. 3309, amended by the Muhammad Ali Boxing Reform Act, Pub.L. 106-210, May 26, 2000,114 Stat. 321.
[2] Amended by the Muhammad Ali Boxing Reform Act, Pub.L.106-210, May 26, 2000, 114 Stat. 321.